642 So.2d 381 (1994)
Eva Thomas CURTIS
v.
STATE of Mississippi.
No. 92-CA-00021.
Supreme Court of Mississippi.
September 1, 1994.
*382 Willard L. McIlwain, Jr., Greenville, for appellant.
Michael C. Moore, Atty. Gen., James M. Hood, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
SMITH, Justice, for the Court:
This appeal arises from a forfeiture proceeding in the Circuit Court of Washington County on a vehicle belonging to the appellant, Eva Thomas Curtis. The vehicle was ordered forfeited after Curtis' brother drove in it to her residence and was arrested for possession of cocaine shortly thereafter. Factors cited by the lower court in support of its order of forfeiture, while certainly factors to be considered, are insufficient to demonstrate Curtis' knowledge of or consent to the illegal use of her vehicle. We find the judgment of the trial court must be reversed and judgment rendered here for Curtis.

FACTS
Officer Jester Johnson of the Hollandale Police Department testified that on the afternoon of May 31, 1992, he participated in executing a search warrant on the home of Eva Thomas Curtis and her brother, Jimmy Thomas. Officer Johnson stated he went to the residence with two other officers, Chief Green Townsend and Walter Clark. Johnson stated Jimmy Thomas arrived driving a Ford Bronco. When Thomas exited the vehicle and "hurriedly" started toward the house, Johnson instructed him to stop. Two officers approached Thomas as he tried to "shake something in his mouth out of a match box." The box was knocked to the ground and a crystal-like substance believed to be crack cocaine was found inside. Johnson testified Thomas continued to chew something which he refused to spit out. He was arrested and taken to the Delta Medical Center where his stomach was pumped. Both the matchbox and the contents of Thomas' stomach contained evidence of crack cocaine.
Officer Johnson stated he was familiar with the fact that Thomas was again arrested in one of Eva Curtis' vehicles ten days to two weeks before the hearing resulting in the case at bar.
Officer Walter Clark also testified to the events of May 31 culminating in Jimmy Thomas' arrest. He noted he had seen Thomas driving the same Ford Bronco around town prior to May 31. Regarding the times he saw the vehicle, he stated most often Thomas was driving it, although he had also seen Eva Curtis driving it. Officer Clark stated, as to Thomas' arrest on another drug charge two weeks prior to the hearing, that Thomas was then driving a blue Dodge minivan registered to Eva Curtis.
On cross-examination, Officer Clark stated Eva Curtis was not in the Bronco or outside her home at all when her brother arrived there on May 31. Regarding the Dodge minivan, Officer Clark admitted he was not aware the vehicle was registered to Eva Curtis' husband, Walter; he was only aware it "belonged" to Ms. Curtis. Clark denied "several members" of the family drove the Bronco, stating he had only seen Eva Curtis and her brother driving it.
Green Townsend stated he was Chief of Police in Hollandale. He testified he had seen Jimmy Thomas driving the Bronco "quite often" but had not seen Eva Curtis driving it. He had witnessed both Thomas and Curtis driving the minivan. Townsend testified that prior to the May 31 incident, on April 15, 1992, he participated in the arrest of Jimmy Thomas where crack cocaine was seized from Thomas' person. On that occasion, neither the Bronco nor the minivan, but a third vehicle was on the scene.
*383 Following the State's case in chief, the defense's motion to dismiss was denied. The trial court informed counsel he would not consider the testimony of the subsequent arrest involving the minivan in deciding the forfeiture of the Bronco.
Eva Curtis testified she was the owner of the Bronco in question. This fact was unrefuted. She also stated she, her husband, her brother, and a friend, Darrell, used that vehicle prior to its being confiscated. Curtis stated her brother used the vehicle "pretty often sometimes when he had to go to the store or something." She denied any awareness of her brother using the Bronco for illegal activities. She did not know Thomas had cocaine with him on May 31 and stated she had no knowledge her Bronco was being used to transport any controlled substances.
On further questioning, Curtis admitted that in executing a search warrant on May 31, officers found three cases of liquor in her home. Curtis stated she was surprised at the finding since she didn't know the liquor was in the house. She stated she was also surprised to learn her brother was driving the Bronco with cocaine. Curtis stated: "Well, yes, I was, because I had told him, you know, not to do this in my car." She stated she had told Thomas this "several" times.
Curtis stated she didn't believe her brother would have cocaine in her car, but had warned him "to make sure he didn't do it." She admitted she knew Thomas had been arrested on drug-related charges prior to May 31. However, she maintained she did not know he might have something to do with drugs when she let him use the Bronco on May 31. Curtis testified her brother did "nothing" for a living.
The hearing was concluded. Currency and guns were found in Eva Curtis' home on May 31 upon the execution of a search warrant were ordered returned. The trial court, by order dated December 12, 1991, ordered the vehicle forfeited to the State. Feeling aggrieved, Curtis presents the following single assignment of error for review by this Court:
THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THERE WAS SUFFICIENT EVIDENCE TO MERIT A FORFEITURE OF THE APPELLANT'S VEHICLE BECAUSE OF ALLEGED KNOWLEDGE OF HER BROTHER'S USE OF THE VEHICLE FOR ILLEGAL DRUG ACTIVITIES.

DISCUSSION
Counsel for Curtis argues the State failed to meet its burden of establishing Curtis' knowledge of her car being used for the transporting of illegal drugs. Curtis states, "The sole basis of the Court's ruling in favor of the State in connection with the subject confiscation is the fact that Mrs. Curtis' brother had been arrested a month prior to the subject arrest and that she had told him `not to do that' in her vehicle." We agree that this appears to be the sole evidence against Curtis. Curtis concludes forfeitures are not favored in this state and to allow Curtis' vehicle to be forfeited under these circumstances would be inconsistent with the purpose of the forfeiture statute.
The State responds that once it has met its burden of proving property is subject to forfeiture due to being used in violation of the Uniform Controlled Substances Law, the burden shifts to the defendant. The defendant must prove that the act or omission resulting in the forfeiture action was committed without her knowledge or consent. This, the State argues, Eva Curtis failed to do.
Miss. Code Ann. § 41-29-179 provides for the disposition of seized property, in relevant part, as follows:
(2) If the owner of the property has filed an answer denying that the property is subject to forfeiture, then the burden is on the petitioner to prove that the property is subject to forfeiture. The standard of proof placed upon the petitioner in regard to property forfeited under the provisions of this article shall be by a preponderance of the evidence.
Miss. Code Ann. § 41-29-153 further sets forth:
(a) The following are subject to forfeiture:
(4) All conveyances, including ... vehicles ... which are used, or intended for use, to transport, or in any manner to *384 facilitate the transportation, sale, receipt, possession or concealment of property described [above], ... however:
B. No conveyance is subject to forfeiture under this section by reason of any act or omission proved by the owner thereof to have been committed or omitted without his knowledge or consent... . (emphasis added).
The State thus relies on the language of § 41-29-153(a)(4)(B) in arguing that the owner of property subject to forfeiture must prove the act in question was committed without his knowledge or consent. The State submits Eva Curtis offered no such proof, but basically attempted to "bury her head in the sand" by simply denying any knowledge that her car might be used by her brother for transporting drugs. The State concludes this was not enough to remove her vehicle from the forfeiture provisions of § 41-29-153.
This Court first construed the forfeiture statute on controlled substances in the case of Ervin v. State ex. rel. Miss. Bur. of Narc., 434 So.2d 1324 (Miss. 1983). In that case, the car of the appellant, Mrs. Ervin, was seized after her husband drove it from Tennessee to Mississippi on a trip in connection with which he was arrested for possession with intent to deliver a controlled substance. The proof showed that Mrs. Ervin had purchased the vehicle prior to the parties' marriage; that Mr. Ervin on occasion would drive the car although he had a truck of his own; that Mrs. Ervin was aware of an eight-year old conviction of her husband on a drug charge, but denied knowledge of a similar, five-year old conviction; and that on the date of his arrest, Mr. Ervin had not been given permission to use the car in an unlawful manner.
This Court, in applying the forfeiture laws, stated:
Any automobile which is used to facilitate the illegal transportation, sale, receipt, possession or concealment of certain controlled substances may be forfeited to the Bureau of Narcotics. Miss. Code Ann. § 41-29-153 (Supp. 1982). In such cases, forfeiture will be denied only when the automobile was illegally used without the owner's knowledge or consent. Id. Moreover, if the owner files a verified answer denying that his automobile is subject to forfeiture, the pertinent statute then places the burden of proof upon the state to prove the propriety of the forfeiture. Miss. Code Ann. § 41-29-179 (Supp. 1982).

Id. at 1325. (emphasis added).
In elaborating upon the State's burden of proof under § 41-29-179, the Court added: "[w]here the owner has presented a verified answer, we think it appropriate that the state should be saddled with the requirement of proving the owner's knowledge or consent only by a preponderance of the evidence." Id. at 1326. It is thus clear that in the instant case, where Curtis filed a verified answer denying her vehicle was subject to forfeiture, that the State must prove Curtis, as the vehicle's owner, had knowledge of or gave consent to its use by her brother to transport a controlled substance.
Both parties cite Saik v. State ex. rel. Miss. Bureau of Narcotics, 473 So.2d 188 (Miss. 1985). Curtis cites Saik for the proposition that forfeitures being penal in nature must be strictly construed. In Saik the car belonging to the appellant was seized following the arrest of his son for the transport and sale of drugs. The appellant introduced evidence that he owned the vehicle, had made all the payments on it, had purchased the tag and registered it to his own address and had the insurance issued in his name only. In light of this evidence and the fact that the appellant had only loaned the car to another son, while the son arrested had no permission to use the vehicle at the time of the incident, the Court determined the vehicle was not subject to forfeiture. The Court stated:
The facts of the case sub judice do not support the contention of the State that appellant's son, Joe A. Saik, by the possession and use of the vehicle on certain occasions was vested with an ownership of it as opposed to the record title of appellant, who testified without contradiction that the son was not permitted use of the vehicle at the time of the sale of marijuana and that *385 appellant had no knowledge of the illegal use of his vehicle by [his son].
Id. at 189-90.
In the instant case, the trial court relied on the following factors in support of the forfeiture order:
(1) the vehicle was frequently operated by Jimmy Thomas with the knowledge and consent of Curtis; (2) Curtis acknowledged awareness that her brother had been arrested on April 15, 1991, on a drug charge; and finally, (3) in connection with her brother's drug-related activities, Curtis told him "not to do that" in her vehicle. The trial court found that Curtis' admonishment to her brother demonstrated her awareness of his involvement in drug activities. The court further found that Curtis' continued consent to her brother's use of her car after acquiring this knowledge effectively rebutted her contention that her brother used the vehicle for drug activities without her knowledge and consent.
Returning to Ervin, this Court considered two factors  that Mr. Ervin occasionally used his wife's car and that he had access to her keys, "totally inadequate to establish that Mrs. Ervin had knowledge or consented to the illegal use of her car." Id. The Court was of the opinion that "such facts are as consistent with innocence as they are with guilt." Id. The only remaining factor which the lower court had cited in ordering the forfeiture was Mrs. Ervin's admitted knowledge of her husband's first drug conviction. In reversing the forfeiture order, this Court concluded:
Mrs. Ervin testified that she only had knowledge of the eight-year old conviction. She also stated that she had never seen marijuana or other illegal drugs in her home or in the presence of her husband. Moreover, she completely denied giving any permission to her husband to use the car in an unlawful manner.
It is our considered opinion that the owner's knowledge of a spouse's eight-year old conviction fails to establish by a preponderance of the evidence that the owner had knowledge of or consented to the recent unlawful use of the owner's automobile. Since the evidence presented by the state was insufficient to warrant forfeiture, the case must be reversed and rendered.
Id.
Consistent with our decision in Ervin, we again cannot rely upon the fact that Eva Thomas Curtis frequently allowed her brother the use of her vehicle. Similarly, the fact that Curtis warned her brother against using her car for drug activities could point in either direction. These facts are as consistent with Curtis' innocence as they are with guilt. In a case interpreting a forfeiture statute for illegal hunting this Court quoted a New Jersey decision which noted the danger of such statutes reaching "not only the property of criminals, but also ... that of innocent owners who did all they reasonably could to prevent the misuse of their property." Threlkeld v. Miss. Dept. of Wildlife, 586 So.2d 756, 759 (Miss. 1991), citing State v. 1979 Pontiac Trans Am, 98 N.J. 474, 487 A.2d 722, 727 (1985). Warning her brother not to carry out his illegal business in her vehicle was not much, but certainly should not be held against Curtis. As in Ervin, the only remaining factor is knowledge of a previous drug activity, though in this case the brother of Curtis was arrested, but not yet convicted of possession of a controlled substance approximately six weeks prior to the arrest leading to the forfeiture. We find this factor, standing alone, is insufficient to meet the State's burden of proving Curtis had knowledge of or consented to the unlawful use of her vehicle.

CONCLUSION
Where, as in the case sub judice, an owner of property files a verified answer denying that property is subject to forfeiture, the burden is on the State to prove to the contrary. Necessarily the State must demonstrate, by a preponderance of the evidence, that the owner had knowledge of or consented to the illegal use of his property for drug-related activities. The most that can be said of the evidence in this case is that Curtis was aware her brother had previously been arrested on drug possession charges, though not in connection with the Ford Bronco or any other vehicle or property of Curtis. In sum, Curtis' testimony certainly raises the *386 eyebrow, in particular her surprise at the three cases of liquor found by officers in her bedroom of her home while executing the search warrant. She was similarly "surprised" that her brother was arrested using her vehicle while possessing cocaine. In any event, though not unmindful of the sound policy behind the narcotics forfeiture statutes, we must hold as we have previously, that "facts merely creating a suspicion that the owner had knowledge of the driver's illegal activity are inadequate to support a forfeiture." Ervin, 434 So.2d at 1326. We said in Ervin that "the rationale behind this forfeiture statute is based on the observation that forfeiture of automobiles will hamper narcotics trafficking by striking at its source of mobility." Id. at 1326. Seizing the property of an owner who has not been proven to be anything other than innocent would not promote that policy.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
PITTMAN, J., not participating.