## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01030-SCT

*RICKY GALLOWAY*

*v.*

*CITY OF NEW ALBANY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/1998 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM WAIDE |
| ATTORNEYS FOR APPELLEE: | LAWRENCE LEE LITTLE |
| | THAD J. MUELLER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 4/22/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/13/99 |

**BEFORE PRATHER, C.J., MILLS AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

¶1. In this civil forfeiture case, the trial judge granted the appellee's petition for the forfeiture of the appellant's vehicle, under the auspices of the drug forfeiture statutes. This Court reverses and renders, because (a) the petition for forfeiture was not timely filed; (b) the innocent owner exception to the forfeiture statutes applies to the appellant; and, (c) the Excessive Fines Clause of the Mississippi Constitution prohibits the forfeiture of the appellant's vehicle in this case.

## I. STATEMENT OF THE CASE

¶2. On March 6, 1996, the City of New Albany, Mississippi, petitioned for forfeiture of a 1993 Chevrolet truck, vehicle identification number 1GCDC14K9PZ109976. The vehicle belonged to Ricky Galloway, and was subject to a lien held by Easy Finance. The petition alleged that Ricky Galloway and his wife (Tina Galloway) used the truck to sell a schedule II narcotic (prescription pain medication) to an undercover agent in Pontotoc County, Mississippi. The petition also alleged that the Galloways had been arrested for this crime and that the vehicle had been seized by the New Albany Police Department.

¶3. On May 29, 1996, New Albany moved to stay the forfeiture proceedings until the pending criminal case against Galloway had been adjudicated. On July 29, 1997, the criminal case against the Galloways

commenced. At the conclusion of the evidence, Circuit Judge Barry Ford directed a verdict of acquittal in favor of Ricky Galloway (hereinafter Ricky). Tina Galloway (hereinafter Tina) was acquitted by the jury.

¶4. On August 1, 1997, Judge Ford entered an order of final dismissal of the charges against the Galloways. Specifically, Judge Ford found that there was "no credible evidence to connect the Defendant, Ricky Galloway, with the sale of any controlled substance . . .".

¶5. On August 25, 1997, Ricky Galloway filed for summary judgment on the forfeiture petition, and Circuit Judge Thomas Gardner denied the motion September 11, 1997. A non-jury trial was held April 6, 1998. On May 20, 1998, Judge Gardner issued an order, in which he granted the petition for forfeiture, and specifically found that:

> plaintiff has met its burden of proof, that being from a preponderance of the evidence; that plaintiff had jurisdiction and probable cause to seize said vehicle . . . that all pleadings and proceedings were filed or occurred in a prompt and timely manner; that said forfeiture is not an excessive penalty as contemplated by the 8th Amendment to the Untied States Constitution; that this proceeding was not barred by collateral estoppel; that defendant's right to a speedy trial was not violated; that no judicial warrant was required for said seizure; that defendant's right to due process was not violated; that defendant has not suffered an excessive deprivation of property; that plaintiff complied with the statutory provisions as provided in Mississippi Code Annotated section 41-29-177; and that the interest of defendant Easy Finance of New Albany is less than the present value of subject property.

From that judgment, Ricky appeals, and raises the following issues for consideration by this Court:

**A. Whether the forfeiture should have been denied because the forfeiture petition was not commenced "promptly" as required by statute, and due process provisions of the United States and Mississippi Constitutions?**

**B. Whether the trial judge erred in ordering the forfeiture of the truck, merely because the agent had probable cause to seize it; and, whether, instead, the trial court should have allowed forfeiture of the truck in an absence of proof, at trial, that Galloway knew about the drug transaction?**

**C. Whether forfeiture of a vehicle for a crime which the appellant had been adjudged to be innocent, violates the Excessive Fines Clause of the Mississippi Constitution?**

**D. Whether the forfeiture petition should have been dismissed on grounds of collateral estoppel and double jeopardy?**

**E. Whether the delay between the seizure of the property, and the trial was so lengthy as to deny the due process required by the United States Constitution Amendment Fourteen and Mississippi Constitution Section Fourteen?**

**F. Whether the trial court erred in denying a jury trial?**

**G. Whether the trial court erred in holding that a "preponderance of the evidence" standard applies?**

**H. Whether the City of New Albany had authority to forfeit a vehicle for a crime allegedly**

**committed in Pontotoc County?**

¶6. This Court finds that issues A, B, and C have merit, and reverses and renders in favor of the appellant. The other issues are without merit, and will not be addressed.

## II. STATEMENT OF THE FACTS

¶7. The record reflects that the appellant, Ricky Galloway, was married to Tina Galloway (the ex-wife of Randy Russell). Russell approached narcotics agents, and offered to purchase prescription drugs from Tina. Arrangements were made for Russell and Mississippi Bureau of Narcotics Agent Chuck Smith to do so.[1]

¶8. After repeatedly being approached by Russell, Tina agreed to sell Russell the prescription pain medication, which she was taking for recent carpal tunnel surgery. Russell owed Tina approximately $6,000 in child support. Tina told Ricky that Russell was going to pay her some child support, and asked Ricky to drive her to meet Russell. As was customary, Ricky Galloway accompanied Tina Galloway to meet with her ex-husband. Ricky did not like or trust Russell, and Tina testified that Russell had physically abused her in the past.

¶9. Russell and Officer Smith met the Galloways at the North Pontotoc School. Ricky was driving his Chevrolet Silverado truck. Tina was on the passenger's side. Russell walked to the passenger's side of the truck. There was a ballgame going on at the school, and Ricky (who was listening to the radio), did not participate in the conversation between Tina and Russell or hear what they said. Ricky did not like Russell, and he did not want to hear what Russell said.

¶10. Russell returned to Officer Smith's undercover vehicle. It is disputed whether Russell told Officer Smith that "they" did not want to do the transaction within 1500 feet of a school or "she" did not want to do so. At any rate, the parties drove to a nearby service station. Ricky testified that he moved the truck, without questioning Tina, because she told him to do so.

¶11. At the service station, Tina exited Ricky's truck, and got in the car with Russell and Officer Smith. Smith asked Ricky's identity, and Tina replied, "He's cool."[2] She removed sixteen pain killers from a film canister, and sold them to Smith. She then returned to Ricky's truck. Ricky asked her if she got the child support, and she responded affirmatively.

¶12. Approximately two weeks after the transaction, Russell called Ricky and said, "I set Tina up." Ricky did not know what Russell was talking about, and hung up the phone. Russell also called Tina, and said, "I told you I'd get you and I got you."[3]

¶13. On December 6, 1995, the Galloways were arrested by the Pontotoc County Sheriff's Department.[4] Ricky's truck was seized by the New Albany Police Department.[5]

¶14. At the forfeiture proceeding, Ricky Galloway steadfastly maintained that he only went to take his wife to get child support, and that he did not know about the drug transaction. Ricky's testimony was confirmed by his now ex-wife, Tina, who divorced him after they were arrested and before the forfeiture proceedings.

## III. LEGAL ANALYSIS

¶15. This Court addresses the standard of review in analysis:

The appropriate standard of review in forfeiture cases is the familiar substantial evidence/clearly erroneous test. ***Hickman v. State, ex rel. Mississippi Department of Public Safety***, 592 So.2d 44, 46 (Miss.1991); ***McClendon v. State***, 539 So.2d 1375, 1377 (Miss.1989); ***Leatherwood v. State***, 539 So.2d 1378, 1387 (Miss.1989). This Court will not disturb a circuit court's findings unless it has applied an erroneous legal standard to decide the question of fact. ***Hickman***, 592 So.2d at 46.

***City of Meridian v. Hodge***, 632 So. 2d 1309, 1311 (Miss. 1994).

## A. Whether the forfeiture should have been denied because the forfeiture petition was not commenced "promptly" as required by statute, and due process provisions of the United States and Mississippi Constitutions?

¶16. The record reflects that the truck was seized December 6, 1995, and the petition for forfeiture was filed March 6, 1996. Ricky Galloway argues that the petition for forfeiture was not timely filed.

¶17. The statute then in effect provided, in pertinent part, that "when any property, other than a controlled substance, raw material or paraphernalia, is seized under the Uniform Controlled Substances Law, proceedings under this section shall be instituted promptly." Miss. Code Ann. § 41-29-177 (1) (1995).

¶18. Shortly thereafter (effective July 1, 1996), the statute was amended to provide, in pertinent part, that: "when any property, other than a controlled substance, raw material or paraphernalia, is seized under the Uniform Controlled Substances Law, proceedings under this section shall be instituted within thirty (30) days from the date of seizure or the subject property shall be immediately returned to the party from whom seized." Miss. Code Ann. § 41-29-177 (1) (Supp. 1996).

¶19. Ricky argues that the three-month delay between the seizure and the filing of the petition for forfeiture was improper. The only case to interpret the meaning of the term "promptly" in the pre-1996 version of the statute is ***Lewis v. State***, 481 So. 2d 842 (Miss. 1985). In ***Lewis***, this Court held that an eighteen-month delay between the seizing of the property and the filing of the petition for forfeiture -- absent any explanation for the delay -- was improper. That is, the petition was not "promptly" filed within the meaning of the statute. ***See Lewis***, 481 So. 2d at 844. The ***Lewis*** decision (which involved a delay of eighteen months) provides little guidance in the case *sub judice* (which involves a delay of three months).

¶20. The subsequent statutory amendment (requiring forfeiture petitions to be filed within thirty days of the seizure of the property) is not controlling in this case. However, it does provide some direction as to what might be considered "prompt" in this circumstance.

¶21. There is nothing in the record to justify the delay in filing in this case. This Court holds that the petition for forfeiture was not "promptly" filed within the meaning of the statute. In so doing, "we adhere to our longstanding principle that forfeiture statutes must be strictly construed, since they are penal in nature." ***See Parcel Real Property v. City of Jackson***, 664 So. 2d 194, 198 (Miss. 1995) (citing ***Saik v. State***, 473 So.2d 188 (Miss.1985)).

## B. Whether the trial judge erred in ordering the forfeiture of the truck, merely because the agent had probable cause to seize it; and, whether, instead, the trial court should have allowed forfeiture of the truck in an absence of proof, at trial, that Galloway knew about the drug transaction?

¶22. Ricky Galloway also argues that he is an innocent owner, such that his innocence of any drug offense

should bar the forfeiture of his vehicle. Indeed, our statutory scheme for drug forfeitures provides for an innocent owner exception:

> (a) The following are subject to forfeiture:
>
> * * *
>
> (4) All conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of property described in paragraph (1) or (2) of this section, however:
>
> * * *
>
> B. No conveyance is subject to forfeiture under this section by reason of any act or omission proved by the owner thereof to have been committed or omitted without his knowledge or consent . . .'

Miss. Code Ann. § 41-29-153 (1998).

¶23. This exception to the forfeiture law has been enforced by this Court:

> Where, as in the case *sub judice*, an owner of property files a verified answer denying that property is subject to forfeiture, the burden is on the State to prove to the contrary. Necessarily the State must demonstrate, by a preponderance of the evidence, that the owner had knowledge of or consented to the illegal use of his property for drug-related activities. . . . In any event, though not unmindful of the sound policy behind the narcotics forfeiture statutes, we must hold as we have previously, that "facts merely creating a suspicion that the owner had knowledge of the driver's illegal activity are inadequate to support a forfeiture." *Ervin*, 434 So.2d at 1326. We said in *Ervin* that "the rationale behind this forfeiture statute is based on the observation that forfeiture of automobiles will hamper narcotics trafficking by striking at its source of mobility." *Id.* at 1326. Seizing the property of an owner who has not been proven to be anything other than innocent would not promote that policy.

*Curtis v. State*, 642 So. 2d 381, 385-86 (Miss. 1994).

¶24. Furthermore, "[f]orfeitures are not favored in this state; therefore, before a forfeiture may be ordered, it must come within the terms of the statute which imposes the liability of forfeiture." *Jackson v. State*, 591 So. 2d 820, 823 (Miss. 1991).

¶25. "A concern of this Court has been that forfeiture statutes had the capacity 'not only [of reaching] the property of criminals, but also ... that of innocent owners who did all they reasonably could to prevent the misuse of their property.'" *Parcel Real Property*, 664 So. 2d at 198 (quoting *Curtis*, 642 So.2d at 385).

¶26. Most of the cases on this subject involve owners who were not present in the automobile at the time of the drug transaction. *See, e. g. Curtis*, 642 So. 2d at 385-86; *Saik v. State*, 473 So. 2d at 191; *Ervin v. State*, 434 So. 2d 1324, 1326 (Miss. 1983). This case is different, because the appellant actually drove the vehicle to the location of the drug transaction. Moreover, this Court has also held that "[w]illful blindness will remove an innocent owner defense." *Parcel Real Property*, 664 So. 2d at 197 n.2.

¶27. Thus, the question is, whether the preponderance of the evidence indicates that Ricky Galloway knew about or consented to the drug transaction. All of the testimony indicates that Ricky thought he was driving his wife to pick up child support. There is no evidence to the contrary.

¶28. The City of New Albany relies heavily on the fact that, after Russell went to Ricky's truck, the vehicles were moved away from the school. At most, this might create a suspicion that Ricky Galloway knew about or consented to the drug transaction. However, as stated earlier, mere suspicion of the vehicle owner's involvement is not enough to support a forfeiture. *Jones v. State*, 607 So. 2d 23, 29 (Miss. 1991).

¶29. Thus, the exception for innocent owners contained in the forfeiture statutes applies to Ricky Galloway. Therefore, the forfeiture in this case was improper. *See Saik*, 473 So. 2d at 191.

## C. Whether forfeiture of a vehicle for a crime which the appellant had been adjudged to be innocent, violates the Excessive Fines Clause of the Mississippi Constitution?

¶30. Ricky Galloway next argues that the forfeiture in this case violates the Excessive Fines Clause of the Mississippi Constitution. Specifically, Ricky claims that the value of the forfeited property in this case is grossly disproportionate to the culpability of the owner. This Court recently considered this issue for the first time in the companion cases of *One (1) Charter Arms v. State*, 721 So. 2d 620 (Miss. 1998) (hereinafter *Charter Arms*) and *One (1) 1979 Ford v. State*, 721 So. 2d 631 (Miss. 1998) (hereinafter *1979 Ford*). In those cases, the Court noted that:

> The United States Supreme Court has not yet prescribed a test for determining whether a forfeiture is an excessive fine. . . . The Mississippi Constitution has its own excessive fines clause, which is identical to the Excessive Fines Clause of the United States Constitution. Miss. Const. art. 3 § 28 (1890).

*Charter Arms*, 721 So. 2d at 623; *1979 Ford*, 721 So. 2d at 634.

¶31. Indeed, the Mississippi Constitution provides as follows: "Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed." Miss. Const. art. 3 § 28 (1890). The test employed to interpret this clause of the Mississippi Constitution considers both the instrumentality of the seized property in the crime and the proportionality of the forfeiture:

> This Court recognizes the factually intensive nature of forfeiture cases and we elect to apply a test that combines the three prongs of the "instrumentality" test with a "proportionality" review. The elements of the test that we elect to employ are as follows:
>
> (1) The nexus between the offense and the property and the extent of the property's role in the offense;
>
> (2) The role and culpability of the owner;
>
> (3) The possibility of separating the offending property from the remainder; and
>
> (4) Whether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the crime or grossly disproportionate to the culpability of the owner.

The above test combines the elements of the instrumentality test with a weighing of proportionality on the individual circumstances of each case to determine whether the forfeiture is excessive. It avoids the harsh and unjust results that can be, and will be, produced by the implementation of a "bright-line" instrumentality test. At the same time, it allows the lower courts, and this Court on review, to consider all relevant factors under a framework that is simple, yet complete.

* * *

The analysis under the proportionality test that we employ here is two-part. First, under the "instrumentality" (or "nexus") test, the forfeited property must have a sufficiently close relationship to the illegal activity. Second, under the "proportionality" test, forfeiture of the property must not impose upon the owner a penalty grossly disproportionate to his offense.

*Charter Arms*, 721 So. 2d at 624-25; *1979 Ford*, 721 So. 2d at 636.

¶32. Under the instrumentality test, the forfeited truck did not have a sufficiently close relationship to any illegal activity.[6] The truck was used to drive Tina to the location where she sold the drugs. The owner of the truck, Ricky Galloway, drove the truck to the location. However, he did not know about his passenger's intentions to sell the drugs. Ricky Galloway was not physically present when the actual drug sale occurred. He received a directed verdict regarding his criminal culpability for this incident. Furthermore, it was not illegal for Tina to possess the medication that had been prescribed to her. Therefore, no illegal activity actually occurred in the truck. The illegal drug sale took place in another vehicle. For all these reasons, the forfeiture fails the instrumentality prong of the test.

¶33. The forfeiture also fails the proportionality prong of the test. Ricky testified that the truck was worth approximately $11,000, and that he had borrowed approximately $4,000 against the truck. There is no credible evidence to connect Ricky Galloway with the sale of drugs, a matter which had already been adjudicated in the criminal trial. This Court has held that forfeiture of a vehicle was grossly disproportionate -- even where the property owner was found guilty of possession of a small amount of cocaine. In *Charter Arms*, this Court noted:

Here there is no doubt that the [seized vehicle] was used to transport [the property owner] Williams into a known drug area to purchase cocaine, afforded him quick egress from the area, and allowed him a measure of privacy in which to consume his ill-gotten drugs. . . .

* * *

It is undisputed that Williams had only one rock of cocaine in his possession at the time of his arrest. Furthermore, the cocaine was not hidden or concealed in the car, it was on his person. Williams, with no prior felony convictions regarding controlled substances, paid a $2,500 fine for possession of cocaine and was placed on probation for a period of three years. Considering these additional facts under the fourth prong of the test set forth above, the conclusion is that the forfeiture of the Corvette is grossly disproportionate to the crime.

*Charter Arms*, 721 So. 2d at 625-26.

¶34. It the case *sub judice*, the owner of the seized property was acquitted of criminal wrongdoing. It is only logical that -- if the forfeiture of the vehicle was grossly disproportionate in a case where the property owner was found consuming a small amount of cocaine in the vehicle -- then it would certainly be disproportionate, where, as here, the property owner was acquitted of drug charges. *See Id.* Based on the foregoing, this Court holds that the forfeiture of the property in this case violated the Excessive Fines Clause of the Mississippi Constitution.

## IV. CONCLUSION

¶35. This case is reversed and rendered on Issues A, B, and C. That is, the petition for forfeiture was not promptly filed; the statutory exception for innocent owners applies to Ricky Galloway; and, the forfeiture violates the Excessive Fines Clause of the Mississippi Constitution. The other issues raised by Galloway are without merit.

¶36. **REVERSED AND RENDERED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. COBB, J., NOT PARTICIPATING.**

1. Officer Smith knew that Russell was a felon and "did not have a good history."

2. Tina, who was recovering from surgery at the time of the transaction, testified that she made this comment because "[she] was so doped up, everybody was cool at that time."

3. Russell and Tina had frequently been to court over child support. Russell thought that, if Tina were imprisoned, he would not owe child support.

4. Ricky testified that his son had died in the Pontotoc County Jail. Ricky sued the county and the sheriff, and bought the truck with the resulting settlement money (less than a year before the drug deal at issue in this case).

5. The New Albany Police Department and the Mississippi Bureau of Narcotics were the only agencies to participate in the drug transaction. New Albany's equipment and personnel were used to conduct the sting operation and accompanying surveillance. The Pontotoc Sheriff's Department was not involved until the arrests were made.

6. It is arguable whether an "illegal activity" even occurred, given that Ricky received a directed verdict at the criminal proceedings, and Tina was acquitted by the jury (presumably based on the theory of entrapment).