970 So.2d 744 (2007)
1994 MERCURY COUGAR, Vin # 1MELM62WORH628952 (Edna Jones), Appellant,
v.
TISHOMINGO COUNTY, Mississippi, Appellee.
No. 2006-CA-01773-COA.
Court of Appeals of Mississippi.
December 11, 2007.
*745 John R. White, attorney for appellant.
Richard D. Bowen, attorney for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. This appeal arises from a forfeiture proceeding in the Circuit Court of Tishomingo County involving a vehicle owned by the appellant, Edna Jones. Tishomingo County seized the vehicle after Mrs. Jones's son, J.C. Jones, was arrested for selling prescription narcotics to undercover officers employed by the Tishomingo County Sheriff's Office while driving the vehicle. The circuit court ordered the vehicle forfeited to Tishomingo County. Aggrieved, Mrs. Jones appeals on the grounds that the circuit court erred in placing the burden of proof on her to show that she had no knowledge that her son was using the vehicle for drug-related activities and that the court erred in forfeiting the vehicle. We agree and therefore reverse the judgment of the circuit court and render judgment in favor of Mrs. Jones.

FACTS AND PROCEDURAL HISTORY
¶ 2. On May 2, 2006, J.C. Jones was arrested by the Tishomingo County Sheriff's Department for selling morphine and Percocet pills to undercover officers. At the time of his arrest, J.C. Jones was driving a 1994 green Mercury Cougar, VIN 1MELM62WORH628952, titled to his mother, Edna Jones. On or about May 31, 2006, the vehicle was seized from the home of Mrs. Jones, where J.C. was living.
¶ 3. On July 14, 2006, Tishomingo County filed a petition for forfeiture, and a hearing was held on the petition on September 10, 2006. At the hearing, the County's one and only witness, officer Jason Williamson of the Tishomingo County Sheriff's Department, testified that he, officer Parmer, and agent Shoney Smith of the Mississippi Department of Transportation purchased four morphine pills and two Percocet pills from J.C. Jones.[1] Officer Williamson testified that, at the time of the *746 arrest, J.C. Jones was driving Mrs. Jones's 1994 Mercury Cougar, and that the vehicle was later seized because it was either used or intended for use in violation of Mississippi controlled substances law. Officer Williamson further testified that, according to the information he had, the source of the morphine and Percocet was J.C. Jones's father, for whom the pills were prescribed by the VA hospital. When asked whether there were any other purchases of controlled substances associated with J.C. Jones, Williamson replied that there were, but he provided no further details in this regard.
¶ 4. After the county rested, Mrs. Jones, acting pro se, had her husband, Thomas Jones, make a statement under oath. Mr. Jones testified that he and his wife were out of town at the time of J.C.'s arrest, and that they were not aware that J.C. was selling drugs nor were they aware that he was even using the vehicle. Mr. Jones stated that the only time J.C. was supposed to be using the car was when he and the couple's other son, Thomas Jones, Jr., were driving to and from work. Mr. Jones testified that he had prescriptions for Percocet and morphine and approximately ten other drugs due to his heart and lung problems. According to Mr. Jones, J.C. was not obtaining drugs from him, although J.C. had stolen his father's pills from the mailbox in the past. Mr. Jones testified that, when he discovered J.C. was stealing from him, he began having his pills held at the post office until he was able to pick them up. When questioned about J.C.'s prior convictions, Mr. Jones testified that J.C. had previously been convicted of driving under the influence, but that he was not aware of any prior felony or drug convictions. Mr. Jones testified that J.C. was obtaining the drugs from an individual named Buddy and that J.C. told as much to officers Williamson and Parmer.
¶ 5. Mrs. Jones then took the stand and stated that she and her husband were out of town at the time J.C. was arrested and that she was not aware that J.C. was using her vehicle to sell drugs. She stated that J.C. and his brother needed a means of traveling to and from work so she began allowing them to use the vehicle approximately four to six months previously and that this was the only time her sons were using the vehicle.[2] According to Mrs. Jones, she had J.C. arrested for domestic violence, but she could not recall any other convictions.
¶ 6. Mrs. Jones stated that, when her husband's medicine began to go missing, the couple suspected that J.C. was responsible as she stated that J.C. had a bottle of Valium that was taken from the mailbox. As a result, Mrs. Jones confirmed that she and her husband began having the pills held at the post office and carrying the medicine with them in a bag everywhere they went. Mrs. Jones stated that this may have occurred three months previously, possibly around the time J.C. was arrested.
¶ 7. According to Mrs. Jones, because J.C. does not have a driver's license, she and her husband left the keys to the vehicle in the control of Thomas, Jr. who was to drive himself and J.C. to work. She testified that J.C. was not allowed to drive the vehicle nor was she aware that he was driving the vehicle. Mrs. Jones stated that J.C. lost his license after he was arrested for driving under the influence in approximately November of 2005 and that, *747 at the time he got the DUI, J.C. was driving another of her vehicles without her permission. When questioned about whether she knew of J.C.'s propensity to drive vehicles left available to him, Mrs. Jones stated that she trusted Thomas, Jr. with the vehicle when they left to go out of town and that, to her knowledge, he, not J.C., had been driving the vehicle.
¶ 8. The circuit court found that Mrs. Jones knew or should have known that her vehicle was being used in the transportation or facilitation of the sale of controlled substances and, therefore, the vehicle should be forfeited to Tishomingo County. In so finding, the court relied on the following facts: (1) Mrs. Jones suspected that J.C. was stealing her husband's medications during the time period in which J.C. was using the vehicle and at or around the time he was arrested, and (2) Mrs. Jones was aware that J.C. had used another of her vehicles without her permission on a prior occasion. Mrs. Jones now appeals on the following grounds: (1) the circuit court impermissibly placed the burden of proof on her to show that she did not have knowledge of or consent to her son's use of the vehicle for drug-related activity and (2) the circuit court erred in finding that the evidence showed that she knew that her son was using the vehicle for drug-related activity. We reverse the ruling of the circuit court and render judgment in favor of Mrs. Jones.

STANDARD OF REVIEW
¶ 9. "The appropriate standard of review in forfeiture cases is the familiar substantial evidence/clearly erroneous test." Galloway v. City of New Albany, 735 So.2d 407, 410(¶ 15) (Miss.1999) (citing City of Meridian v. Hodge, 632 So.2d 1309, 1311 (Miss.1994)). "This Court will not disturb a circuit court's findings unless it has applied an erroneous legal standard to decide the question of fact." Id.

DISCUSSION
I. WHETHER THE CIRCUIT COURT INCORRECTLY PLACED THE BURDEN OF PROOF ON MRS. JONES, THEREBY REQUIRING HER TO PROVE THAT SHE DID NOT HAVE KNOWLEDGE OF OR CONSENT TO HER SON'S USE OF THE VEHICLE FOR DRUG-RELATED ACTIVITY
¶ 10. Mrs. Jones argues that the circuit court erred in requiring her to prove that she had no knowledge that her son J.C. was using her vehicle to facilitate the sale of controlled substances rather than requiring the County to prove that she had such knowledge.
¶ 11. Mississippi's forfeiture statute, Mississippi Code Annotated section 41-29-153, states as follows in pertinent part:
(a) The following are subject to forfeiture:
. . . .
(4) All conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of property described in paragraph (1) or (2) of this section, however:
. . . .
B. No conveyance is subject to forfeiture under this section by reason of any act or omission proved by the owner thereof to have been committed or omitted without his knowledge or consent. . . .
Miss.Code Ann. § 41-29-153 (Rev.2005). Thus, the statute provides for an "`innocent owner' exception." Galloway, 735 So.2d at 411(¶ 22). With regard to burden *748 of proof, the Mississippi Supreme Court has stated the following:
Where, as in the case sub judice, an owner of property files a verified answer denying that property is subject to forfeiture, the burden is on the State to prove to the contrary. Necessarily the State must demonstrate, by a preponderance of the evidence, that the owner had knowledge of or consented to the illegal use of his property for drug-related activities. . . . In any event, though not unmindful of the sound policy behind the narcotics forfeiture statutes, we must hold as we have previously, that "facts merely creating a suspicion that the owner had knowledge of the driver's illegal activity are inadequate to support a forfeiture." Ervin [v. State], 434 So.2d [1324], at 1326 [(Miss.1983)]. We said in Ervin that the "rationale behind this forfeiture statute is based on the observation that forfeiture of automobiles will hamper narcotics trafficking by striking at its source of mobility." Id. at 1326. Seizing the property of an owner who has not been proven to be anything other than innocent would not promote that policy.
Galloway, 735 So.2d at 411(¶ 23) (quoting Curtis v. State, 642 So.2d 381, 385-86 (Miss.1994)); Miss.Code Ann. § 41-29-179(2) (Rev.2005) ("If the owner of the property has filed an answer denying that the property is subject to forfeiture, then the burden is on the petitioner to prove that the property is subject to forfeiture. However, if an answer has not been filed by the owner of the property, the petition for forfeiture may be introduced into evidence and is prima facie evidence that the property is subject to forfeiture. The standard of proof placed upon the petitioner in regard to property forfeited under the provisions of this article shall be by a preponderance of the evidence").
¶ 12. In the instant case, Mrs. Jones filed a response to Tishomingo County's petition for forfeiture;[3] thus, the burden was on the county to prove by a preponderance of the evidence that Mrs. Jones had knowledge that her son J.C. was using her vehicle for drug-related activities. In arguing that the circuit court incorrectly shifted the burden of proof to her, Mrs. Jones relies on the following statement of the court: "The Court finds that the owner of this vehicle, Edna Jones, has not met her burden of proof that she did not have knowledge or did not give consent of its use." The county, however, relying the following statements of the trial judge, argues that the court did not place the burden of proof on Mrs. Jones:
[The] Court finds and determines that there is proof, preponderance of the evidence, that this 1994 Mercury Cougar vehicle was used [p]ursuant to the definition of Section 41-29-153 to facilitate the sale of a controlled substance.
. . . .
The Court finds from the testimony of Mr. and Mrs. Jones that it is evident to the court that the parties, at least through Mrs. Jones' testimony, the Court heard proof that she became very suspicious that the missing medications were being taken by her son, John Colt Jones, and that this was about the time of the arrest in the John Colt Jones case, which was on or about May 2006, and that it was during that period of time that the vehicle was being used by her sons to travel back and forth to Corinth for their work.
. . . .

*749 That being the case, the Court is convinced that Mrs. Jones knew or should have known that the vehicle was being used in the transportation or facilitation of the sale of controlled substance [sic], and it will be forfeited to the County of Tishomingo.
We agree with Mrs. Jones that, if the circuit court did in fact place the burden upon her to prove that she had no knowledge that J.C. was using her vehicle for drug-related activities, such constituted reversible error. However, although the court stated that Mrs. Jones had failed to meet her burden in proving that she had no knowledge of J.C.'s activities, the above portions of the court's ruling cited by the county could reasonably be interpreted as indicating that the court found that a preponderance of the evidence suggested that Mrs. Jones knew that J.C. was using her vehicle for drug-related activities, which would suggest that the court correctly placed the burden of proof on the county. Thus, it is difficult to discern from the court's ruling whether the court allocated the burden of proof to the correct party.[4] We need not resolve this issue, however, because, regardless of which party the court placed the burden of proof upon, as will be discussed below, we find that a preponderance of the evidence does not support a finding that Mrs. Jones knew of or consented to J.C.'s use of her vehicle for drug-related activities and therefore that the forfeiture of the vehicle was unwarranted.
II. WHETHER THE CIRCUIT COURT ERRED IN FORFEITING MRS. JONES'S VEHICLE BASED ON THE FINDING THAT THE EVIDENCE INDICATED THAT MRS. JONES KNEW THAT HER SON J.C. WAS USING HER VEHICLE FOR DRUG-RELATED ACTIVITIES
¶ 13. As was previously discussed, Tishomingo County had the burden of proving that Mrs. Jones had knowledge that J.C. was using the vehicle for drug-related activities. Mrs. Jones argues that the county failed to meets its burden and therefore that her vehicle should not have been forfeited. In finding that Mrs. Jones knew or should have known that her vehicle was being used for the transportation or facilitation of the sale of controlled substances, the circuit court relied on the following factors: (1) Mrs. Jones became very suspicious that her husband's missing medications were being taken by J.C. around the time that J.C. and his brother were using the car to travel back and forth to work and at the time of J.C.'s arrest, and (2) Mrs. Jones was aware that, in November of 2005, J.C. had used another of her vehicles without permission after she had advised him that he could not drive the car because he did not have a driver's license.
¶ 14. The Mississippi Supreme Court has held that "`[f]orfeitures are not favored in this state; therefore, before a forfeiture may be ordered, it must come within the terms of the statute which imposes the liability of forfeiture.'" Galloway, 735 So.2d at 411(¶ 24) (quoting Jackson v. State, 591 So.2d 820, 823 (Miss. *750 1991)); see also Saik v. State, 473 So.2d 188, 191 (Miss.1985) (citing Zambroni v. State, 217 Miss. 418, 64 So.2d 335 (1953) ("Forfeiture statutes are penal in nature and must be strictly construed"). The court has also noted its concern that "forfeiture statutes ha[ve] the capacity `not only [of reaching] the property of criminals, but also . . . that of innocent owners who did all they reasonably could to prevent the misuse of their property.'" Parcel Real Prop. v. City of Jackson, 664 So.2d 194, 198 (Miss.1995) (citing Curtis, 642 So.2d at 385)).
¶ 15. In Ervin v. State, 434 So.2d 1324 (Miss.1983), a husband was arrested for possession of a controlled substance with intent to deliver while in possession of his wife's car. The Mississippi Supreme Court reversed the lower court's finding that the wife had knowledge of the husband's drug-related activities based on (1) her knowledge of the husband's prior drug convictions, (2) the fact that the husband had access to her car keys, and (3) the fact that the husband had used her car on previous occasions. Id. at 1325-26. The court held that the fact that the husband occasionally used the car and that he had access to the keys were "totally inadequate" to establish knowledge on the part of the wife in that such facts were as consistent with innocence as they were with guilt. Id. at 1326. With regard to the wife's knowledge of the husband's prior drug convictions, the court found that the wife only had knowledge of one eight-year-old conviction, and that such knowledge did not demonstrate that the wife had knowledge of the husband's illegal use of the vehicle. Id.[5]
¶ 16. In Saik, a car was seized and forfeited after the car owner's son was arrested for selling marijuana to undercover narcotics officers. 473 So.2d at 189. The car owner testified that he had loaned the car to his son on prior occasions but that his son did not have the authority to take the car without his permission nor did he have such permission on the day of the arrest. Id. at 190. He further testified that he had no knowledge that his son was trafficking in illegal drugs. Id. Based on these facts, the court reversed the lower court's order of forfeiture. Id. at 191.
¶ 17. Finally, in Curtis, a car was seized and forfeited after the car owner's brother was found to be in possession of cocaine immediately after exiting the car. 642 So.2d at 382. The lower court ordered the car forfeited based on the following: (1) the owner often allowed her brother to use the car, (2) the owner was aware that her brother had been arrested on drug charges six weeks before the arrest at issue, and (3) the owner told her brother not to partake in drug-related activities in her car. Id. at 385. Relying on Ervin, the court reversed the order of forfeiture, finding that the fact that the owner often allowed her brother to use the car was insufficient to establish knowledge of the brother's use of the car for drug-related activity and that the fact that the owner warned her brother not to use the car for drug-related activity was equally as consistent with innocence as with guilt. Id. The court then held that the one remaining factor, that of the owner's knowledge of her brother's previous arrest, not conviction, for drug activity, was not sufficient on its own to demonstrate that the owner had knowledge of the brother's illegal use of the vehicle. Id.
*751 ¶ 18. In the case sub judice, we find that the circuit court erred in finding that Mrs. Jones knew that J.C. was using the vehicle for illegal drug-related activity. With regard to Mrs. Jones's suspicion that J.C. was stealing her husband's medications during the time she knew he was using the car, the holdings in Ervin and Curtis indicate that knowledge of one prior instance of drug-related activity is not sufficient to demonstrate that Mrs. Jones had knowledge of the illegal use of her vehicle, especially when the prior activity was not associated with Mrs. Jones's vehicle. Also, after Mrs. Jones and her husband suspected that J.C. was stealing the medications, they took numerous measures to stop him from doing so, including having the medicine held at the post office and carrying the medicine with them in a bag.
¶ 19. Moreover, at the time of his arrest, J.C. did not even have a driver's license and, as in Saik, Mrs. Jones testified that he was not allowed to drive the vehicle and that she was not aware that he was driving the car on the day of his arrest. The circuit court relied on the fact that, on one prior occasion, J.C. used another of Mrs. Jones's vehicles without her permission.[6] However, given that there is no evidence that J.C. used the vehicle for any drug-related purpose on that occasion, such does not demonstrate by a preponderance of the evidence that Mrs. Jones knew that J.C. was using her vehicle for drug-related activities.
¶ 20. We find that the circuit erred in finding that a preponderance of the evidence indicated that Mrs. Jones knew that her son J.C. was using the Mercury Cougar for illegal activity. The evidence, at most, "merely creat[ed] a suspicion that the owner had knowledge of the driver's illegal activity." Ervin, 434 So.2d at 1326. Thus, the innocent owner defense applied to Mrs. Jones.[7] Accordingly, we reverse the judgment of the circuit court and render judgment in her favor.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF TISHOMINGO COUNTY IS REVERSED AND JUDGMENT *752 IS RENDERED IN FAVOR OF APPELLANT, EDNA JONES. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TISHOMINGO COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Most of this information came from the written statement of Smith, who actually purchased the pills from J.C. Jones, which Williamson read into evidence at the hearing.
[2] J.C. and his brother both worked for the same employer, a fence company in Corinth, Mississippi.
[3] In her response, Mrs. Jones stated that she was out of town at the time her vehicle was being used for the sale of drugs, that she was not aware that it was being used for this purpose, and that she would not have allowed her vehicle to be used for this purpose.
[4] It should be noted that, at the close of evidence at the forfeiture hearing, the attorney for Tishomingo County incorrectly advised the trial court as to the burden of proof in this case:

And, Your Honor, the important point I think there is that the burden under the law provides that the owner, this case Mrs. Jones, has the burden of proving that she did not have the knowledge or give necessary consent for her son J.C. Jones to use this vehicle in the commission of the crimes for which he has been convicted which has been testified about today. Your Honor, we submit to the Court that they have not met that burden of proof there.
[5] The court also noted that the wife had never seen her husband with any illegal drugs nor had she seen any drugs in her home, and she denied giving her husband permission to use her vehicle for an illegal purpose. Id.
[6] It should be noted that the circuit court judge stated that, as she understood the testimony, on such occasion, Mrs. Jones had told J.C. that he did not have permission to use the vehicle because he did not have a driver's license. However, we do not read Mrs. Jones's testimony as indicating that J.C. was not allowed to use the vehicle because he did not have a driver's license, but rather that he lost his driver's license as a result of the DUI that he received when he was using the vehicle without permission. The testimony from Mrs. Jones was as follows:

Q. How long has it been since he had a driver's license?
A.J.C.? Well, see, now, he got picked up in Prentiss County for I think it was driving under the influence, and we weren't in town at the time.
Q. When was that?
A. Okay. It was in November. I think it was around November of last year.
Q. What was he driving?
A. He was driving a Chrysler that I had, another car that I had, and we were not in town.
Q. Did he have permission to drive that car?
A. No, he did not.
Q. So you knew of his propensity to drive cars that you left available to him then, didn't you, Mrs. Jones?
A. Well, I trusted my oldest son with my car when we had left, and he had  J.C. hasn't been driving that car back and forth that I  that I am aware of. My oldest son was driving it.
[7] The county points out that the Mississippi Supreme Court has held that "[w]illful blindness will remove an innocent owner defense." Parcel Real Property, 664 So.2d at 197 (citing U.S. v. 5745 N.W. 110 Street, 721 F.Supp. 287, 290 (S.D.Fla.1989) (property owner "deliberately closed her eyes to what she had every reason to believe was the truth")). However, we find no evidence of willful blindness on the part of Mrs. Jones.